## UNITED STATES v. GREENE et al.

(District Court, E. D. Georgia, S. D.   January 24, 1906.)

**1. CONSPIRACY—CRIMINAL PROSECUTION—EVIDENCE.**

On the trial of defendants, charged with conspiracy to defraud the United States, evidence is admissible to show the state of mind of one charged as a co-conspirator with respect to the matters to which the alleged conspiracy related, prior to the date when it is alleged to have been formed.

**2. SAME—DOCUMENTS IN POSSESSION OF CO-CONSPIRATOR—LETTERPRESS COPY OF LETTER.**

A letterpress copy of a letter purporting to have been written by an alleged co-conspirator of defendants on trial, found in his possession and shown to be in his handwriting, is admissible as original evidence to show his state of mind at the time the letter was written, where that may be material evidence in proof of the conspiracy, without showing that the original letter was sent to the person to whom it was addressed.

On Objection of Defendants to the Admission of Certain Evidence Offered.

See 115 Fed. 343.

Marion Erwin, U. S. Atty. Gen., Thomas F. Barr and Samuel B. Adams, Special Asst. U. S. Attys., and Alexander Akerman, Asst. U. S. Atty.

Peter W. Meldrim and William W. Osborne, for defendants.

SPEER, District Judge.   The evidence to which objection is made is a letterpress copy of a letter purporting to have been written by then Lieut. O. M. Carter to Gen. Duane.   It was obviously offered by the government for the purpose of indicating marked anxiety to remain in

charge of the works on the part of the then engineer officer in charge of the river and harbor improvements here. He is also indicted as a co-conspirator. It is of course understood that it was in the performance or execution of these works that the conspiracy and other crimes charged in the indictment have been alleged. Now a conspiracy in itself necessarily involves the state of mind of the conspirators. If one be a conspirator to accomplish an unlawful act, or a lawful act in an unlawful manner, obviously his state of mind may involve his desires, purposes, schemes of self-aggrandizement, and the like. It is competent, therefore, in such cases, to show the state of mind of one who is alleged to be a co-conspirator. It may also be competent to show the antecedent state of mind, if it has distinct relation to the general subject involved in the conspiracy, and if it be, fairly inferable that in some view of the case, evidence of that state of mind will be relevant. Now the antecedent state of mind of Carter is sought to be shown by a letterpress copy of a letter which purports to have been written by Carter to a superior officer some time before the conspiracy was alleged to have been formed. The court cannot at this time declare that this letter is immaterial, and for that reason exclude it. It may possibly turn out to be merely the expression of an officer who desires a certain station. The government insists, however, that it will indicate on the part of Carter such a desire to continue this work, and such a knowledge of its opportunities, that when connected with evidence subsequently to be introduced it will be relevant to the issues to be submitted to the jury. Again, the court can only state that this cannot now be determined. If, however, we should ignore the statement of the government's counsel, and exclude evidence by piecemeal, it might have the effect to withhold from the jury the evidence of a conspiracy, though, if the evidence should be admitted, and construed all together, the existence of a conspiracy or other crime as charged in the indictment might be deduced therefrom. It is, moreover, objected that this letter should be excluded because it is not the original; that no notice was served on Gen. Duane to produce the original; that in its nature it is secondary evidence; and that no effort has been made to lay a foundation for the introduction of secondary evidence. Ordinarily, an objection of that sort must be sustained, but the object of all evidence is the ascertainment of truth, and courts are not restricted to Procrustean rules, if the varying character of the events involved require a modification of such rule. The inquiry being as to the state of mind of Carter, the question is not whether he sent this letter, but whether he wrote it as the expression of his mental condition at the time it was written. That he did write it is shown, not only by the handwriting, by the subject-matter, but by his possession of it. Conceding this to be true, in the absence of proof to the contrary, we have the right to presume that at the time he wrote the letter he intended to send it. It was written for transmission through the mail to a person who had a control in the matter to which his wishes related. Until the presumption above stated is rebutted, the court will presume that he intended to send it. But whether this is true or not, has the government the right to use it as a deliberately

recorded expression of his wishes, as indicating his state of mind. The letter was found in his possession; it was in his handwriting; it involved matters of duty with which it has already been made clear that he was charged. How, then, can it be questioned that this typewritten paper, found in Carter's letterbook, kept by himself personally locked up in his oaken file case, was Carter's act? Is not that the truth? Who can doubt it? It would also seem to be in the nature of a written admission of his purposes. Said Mr. Greenleaf on this subject (13th Ed.) vol. 1, § 198:

"The possession of documents, also, or the having of constant access to them, sometimes affords ground for affecting parties with an implied admission of the statements contained in them."

This doctrine is also followed in the recent and comprehensive work, Wigmore on Evidence, vol. 1, par. 260. The same view is adopted by Rice on Evidence, par. 49. Here is cited the eminent authority of the Massachusetts Supreme Court. The author states that the ruling is unimpaired, and that the logic that originally supported it retains all of its force and vigor. There the court admitted press machine copies of letters purporting to have been written by a defendant to be read to the jury. These were adjudged competent upon two grounds. They were admissible as documents in his possession, to which he had constant access. There the press copies, as they are called, were in fact proved to have been in the handwriting of the defendant. That is true here. There the press copies were in truth a part of the original letters as written by him, transferred by mechanical pressure to other sheets, but such a transfer, said the author, did not destroy the identity of the handwriting as shown on the impression, or render it unrecognizable by persons acquainted with its characteristics. The Supreme Court of New York has held the same where the secondary evidence of the contents of a writing are supported by proof of its genuineness. Of course the rule would be different if it was sought, without other evidence, to charge a third person with responsibility for the recitals of a press copy offered. Thus if a factor in this city had secured a lien from a farmer in Thomas or Lowndes, where is was necessary before it could be enforced to prove a demand, it would not be competent for the factor here merely to introduce his letterpress book, for he must show by proof that the demand reached the person upon whom the demand must be made. In that case, of course, the original demand must be produced or its absence accounted for before secondary evidence could be admitted. But that is not this case. This letter is not offered to bind a third person. It is not offered to affect Gen. Duane, the person to whom it was written. If it were, he would have the right to demand the production of the original. Besides, while it was termed a personal letter, it was, in its essence, an official letter, for it related to an official matter, and was intended to influence official action. It was found in the file which belonged to the government, although under Carter's control. All the earmarks of authenticity are there. It is therefore part of the records of Carter's own office. It was made by him, and placed there by him, and is therefore admissible against

him. See Wright & Tatham, Adolphus & Ellis' Reports, Kings Bench, 364-367. As primary evidence, under the circumstances, it has a force equivalent to that of an official letter. But this is comparatively unimportant. It was offered, as stated, merely to show Carter's state of mind with regard to the work in the improvement of the river and harbor of Savannah and the Georgia coast. Whether it will have any effect to this end must be subsequently determined. Nor will it be held to affect the alleged co-conspirators, who are now on trial, unless the facts show that this state of mind of Carter ripened into the conspiracy charged, and that they took part in it. The government, however, must be permitted to build up its case if it can, and if admissible must not be prevented from bringing to the attention of the jury the facts, documentary or otherwise, upon which it relies to do this; and since no person whatever can be harmed by this letter if it be considered as standing by itself, and since to write it was manifestly Carter's work, this is admitted for the purpose for which it was offered; that is, the attempt to show his state of mind, which the government insists, with the co-operation of the prisoners at the bar, ripened into a broad and injurious conspiracy, and for no other purpose.